UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDY B.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

CASE NO. C18-5020-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1973.[1] She has a GED and previously worked as a home attendant, cashier II, sandwich maker, office helper, cashier, checker, and janitor. (AR 71, 114.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed DIB and SSI applications on June 13, 2013, alleging disability beginning December 31, 2010. (AR 271, 278.) Her date last insured for DIB is June 30, 2016. The applications were denied initially and on reconsideration.

On February 18, 2016, ALJ Michael Gilbert held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 41-130.) On September 23, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 20-35.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on November 8, 2017 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: seronegative arthritis/fibromyalgia/inflammatory arthritis; obstructive sleep apnea; major depressive disorder; panic disorder; dysthymic disorder; and cannabis-related disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium work, with the following limitations: never climb ladders, ropes, scaffolds; occasionally balance; frequently climb ramps, stairs, and crawl; no greater than occasional exposure to extreme cold or heat, wetness, excess vibration, atmospherics, and workplace hazards; no exposure to unprotected heights; limited to uncomplicated/routine tasks as defined by reasoning level no greater than 2; should not interact with the public as part of her job duties except on an incidental basis (occurs five percent or less of workday); and should have no greater than occasional interaction with coworkers, but can be around them throughout the workday. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a janitor and office helper, and noted the VE testimony plaintiff could also work as an office helper if limited to light work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a routine clerk and hand bander, and, if limited to sedentary work, as an addresser and escort vehicle driver.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

ORDER
PAGE - 3

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the ALJ's consideration of medical evidence and medical opinions, in assessing her symptom testimony and lay testimony from her mother, in the assessment of her RFC, and in the decisions at steps four and five. She requests remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Evidence</u>

Plaintiff argues the ALJ failed to properly evaluate the medical evidence. As the Commissioner observes, plaintiff in large part supports this contention with a recitation of medical evidence totaling some eight pages of her opening brief. (*See* Dkt. 14 at 3-10.) Outside of a few statements addressing medical opinions, this description of medical records does not contain any specific assignment of error. Plaintiff, instead, concludes: "All of these medical findings, many of which were never discussed by the ALJ, provide objective evidentiary support for [plaintiff's] testimony about her symptoms and limitations." (*Id*. at 10.) She also clarifies this is a challenge to the ALJ's rejection of her symptom testimony in her reply. (Dkt. 16 at 3.)

The Court reviews only issues asserted specifically and distinctly, and accompanied by legal arguments, in the opening brief. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."; "Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief.") (quoting

ORDER
PAGE - 4

*Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). To the extent viewed separate and apart from the ALJ's evaluation of symptom testimony, plaintiff's lengthy recitation of medical records does not amount to or contain a specific and distinct argument properly considered by this Court. *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (ordinarily, court will not consider matters "not specifically and distinctly argued" in the opening brief)).

## Medical Opinions

Plaintiff's does identify some specific errors associated with medical opinion evidence. As described below, the ALJ found plaintiff more limited than any of the individuals who offered medical opinions. To the extent he could be said to have rejected any portion of a medical opinion, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for that rejection. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

A.   Dr. Brandon Elrod

Dr. Brandon Elrod conducted a consultative physical evaluation on September 1, 2013. (AR 464-67.) He found plaintiff awake, alert, and oriented, sitting comfortably, with mildly pressured speech and occasionally tearful, intact gross and fine motor skills bilaterally, and full grip strength. (AR 466-67.) She had a reciprocal, nonantalgic gait, refused to walk on her toes or heels secondary to low back pain, had a normal, bilaterally straight leg raise test, normal muscle bulk and tone, and full strength in upper and lower extremities bilaterally. She had some decreased range of motion (ROM) of the lumbar spine, but otherwise normal ROM, grossly intact cranial nerves, showed intact sensation, reflexes, and balance, and had negative Romberg. She had "mild tenderness to palpation along the bilateral lumbar spine paraspinal musculature," and "some mild

tenderness to palpation of the bilateral deltoid muscles." (AR 467.)

Dr. Elrod opined plaintiff had no limitation in walking, standing, or sitting, could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and had no postural, manipulative, or environmental limitations. (*Id.*) The ALJ gave Dr. Elrod's opinion some weight given his examination and the general consistency with his clinical findings. (AR 31.) Specifically, Dr. Elrod found intact gross and fine motor skills, full grip strength, normal ROM, full strength in all extremities, gross cranial nerves, intact sensation, reflexes, and balance, negative straight leg raise test, and reciprocal, nonantalgic gait. The ALJ nonetheless found the balance of the medical evidence supported greater functional limitations.

Plaintiff argues Dr. Elrod's opinion is inconsistent with his own clinical findings, pointing to his observation she was occasionally tearful, refused to walk on her toes or heels, and had limitation on ROM and tenderness of the lumbar spine. However, the ALJ rationally interpreted the evidence from Dr. Elrod, including "some" decreased ROM and "mild" tenderness, as consistent with the limitations assessed. Plaintiff's alternative interpretation of this evidence does not suffice to demonstrate error. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (court may not substitute its judgment for that of the ALJ when evidence reasonably supports either confirming or reversing the ALJ's decision).

Plaintiff also notes an absence of indication Dr. Elrod fully tested her fibromyalgia tender points. Yet, plaintiff does not demonstrate any associated error. Plaintiff's "Chief Complaints" on examination with Dr. Elrod included bilateral shoulder pain, low back pain, and migraine headaches, and there is no contention he failed to assess plaintiff in relation to those conditions.

ORDER
PAGE - 6

(AR 464.) The ALJ accounted for additional impairment by finding plaintiff more limited than Dr. Elrod assessed and including RFC limitations on climbing, balancing, stooping, crawling, and environmental factors, as well as limitations accounting for possible impact on mental functioning. (AR 25.) The ALJ specifically found fibromyalgia a severe impairment at step two and considered medical evidence associated with the impairment at step four, including, but not limited to, a tender point examination and follow up appointment by Dr. Eyal Kedar. (AR 28-29, 931-33, 958-60 (March 7, 2014: tender point screen positive at almost 100 percent of tested points; July 25, 2014: complained of diffuse pains, but overall looked much better; tender point screen positive at greater than 75 percent of tested points).) After outlining the evidence, the ALJ acknowledged the treatment provider findings of tenderness and restricted ROM of the neck and shoulder and positive fibromyalgia tender points, and Dr. Elrod's finding of some decreased ROM and mild tenderness of the lumbar spine. (AR 29.) He proceeded to find the clinical findings, including essentially unremarkable physical examinations by Dr. Elrod and others, and the essentially unremarkable diagnostic imaging of the head, lumbar spine, and left shoulder, to support the conclusion plaintiff can perform a limited range of medium work.

Plaintiff asserts the "fairly minor" limitations added to the RFC "do not even begin to account" for her fibromyalgia-related limitations, including only occasional reaching, fingering, feeling, and handling, no more than sedentary exertion, and inability to maintain a regular, full-time work schedule. (Dkt. 16 at 4.) However, there is no medical opinion supporting the existence of such limitations. Nor does plaintiff otherwise demonstrate error based on the absence of a tender point examination by Dr. Elrod. The ALJ's decision to accord some weight to Dr. Elrod's opinion, while finding the medical evidence to support greater functional limitations, has the support of substantial evidence.

ORDER
PAGE - 7

B.   Dr. Melinda Losee

Dr. Melinda Losee conducted a psychological examination on September 17, 2013. (AR 469-72.) Plaintiff reported depression and anxiety. She was not taking medications, had no history of psychiatric hospitalization, and had last received counseling, for about a month, in October 2011. She was cooperative, with good eye contact, socially appropriate, and gave thoughtful and nondefensive answers. (AR 471.) She had depressed mood and broad affect, and was tearful at times. She had normal speech, was alert and oriented, had logical and goal-oriented conversations, and her concentration did not appear significantly impaired. She made one error completing serial sevens, spelled world correctly forward, but not backward, adequately answered fund of knowledge questions, and correctly interpreted common proverbs. Her short- and long-term memory functions appeared intact, she had adequate insight and judgment, and estimated intellectual functioning in the average range. (AR 471-72.)

Dr. Losee found plaintiff's depression and anxiety appeared to be chronic and of mild-to-moderate severity, but her ability to complete most activities of daily living did not appear to be impaired. (AR 472.) "She reported mild avoidance behavior (e.g., crowds, family), but not restrictions in her ability to travel outside the home. She reported being able to perform adequately in the past despite her chronic mood disturbance." (*Id*.) Plaintiff appeared capable of maintaining attention and concentration for extended periods, and was able to understand, remember, and carry out instructions, make work-related decisions, handle normal work pressure and adapt to changes in a work setting, and respond appropriately to supervision, coworkers, and the public. "However, she is likely to isolate from others due to social anxiety." (*Id*.)

The ALJ gave Dr. Losee's opinion some weight given her examination and the general consistency of her opinion with her clinical findings. (AR 32.) He pointed, specifically, to her

finding plaintiff was cooperative, socially appropriate, with good eye contact, and that she had intact memory functions and not significantly impaired concentration. However, the ALJ found the balance of the medical evidence to support the limitations set forth in the RFC.

Plaintiff asserts the ALJ did not state any reason for rejecting Dr. Losee's opinion she would be likely to isolate from others. Plaintiff, however, does not show the ALJ rejected this opinion. An ALJ need not provide a reason for rejecting a physician's opinion where the ALJ incorporates the opinion into the RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). The ALJ's findings need only be consistent with, not identical to, limitations assessed by a physician or psychologist. *Id*. (ALJ properly incorporated an opinion by assessing RFC limitations "entirely consistent" with limitations assessed by physician). The ALJ here accounted for Dr. Losee's statement by prohibiting more than incidental interaction with the public and no greater than occasional interaction with coworkers. (AR 25.) The fact the RFC allows for plaintiff to be around coworkers does not reflect a rejection of Dr. Losee's opinion. Indeed, Dr. Losee specifically found plaintiff capable of responding appropriately to supervision, coworkers, and the public. It should further be noted that the ALJ otherwise found plaintiff more limited than assessed by Dr. Losee and able to perform only uncomplicated/routine tasks, defined by a reasoning level of no greater than 2. Plaintiff's assertion of error lacks merit.

C.   <u>Non-examining State Agency Physicians</u>

The record contained opinions from State agency psychological consultants Drs. Michael Brown and Bruce Eather, and medical consultant Dr. Howard Platter. (AR 161-86.) The ALJ accorded the opinions some weight, noting their review of the medical evidence and general consistency with the clinical findings of treatment providers and examiners, but found the record as a whole to support greater or additional functional limitations. (AR 32.)

ORDER
PAGE - 9

Plaintiff argues these opinions are entitled to little weight because they did not review evidence beyond December 2014. In support, she cites the regulatory provision addressing the supportability of a medical opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the more relevant evidence and the better an explanation provided, the more weight an opinion will be given; the weight given opinions of a nonexamining sources "will depend on the degree to which they provide supporting explanations" and the agency will evaluate the degree to which they "consider all pertinent evidence" including treating and examining medical opinions).

The Commissioner responds that, while the evidence reviewed affects supportability, *id.*, the ALJ here cited to the consistency of the opinions with the record, §§ 404.1527(c)(4), 416.927(c)(4) (the more consistent with the record as a whole, the more weight an opinion will be given). Plaintiff's contention this constitutes an improper post hoc rationalization is not well taken. It responds directly to plaintiff's argument and properly addresses the ALJ's findings. There is, moreover, no medical opinion, dated either before or after December 2014, supporting greater limitations in functioning. Plaintiff, at best, offers a different interpretation of the medical evidence in the record, without demonstrating the ALJ's interpretation was not rational.

D.  Global Assessment of Functioning Scores

Plaintiff notes the inclusion of Global Assessment of Functioning (GAF) scores of 48 from mental health counselor Carol Stieper and Dr. Lorraine Barton-Haas. (AR 774, 802.) She takes issue with the ALJ's decision to give no weight to these scores, asserting the consistency of the GAF rating with her symptom testimony and other medical evidence, including Dr. Losee's statement she is likely to isolate from others.

According to the prior version of the Diagnostic and Statistical Manual of Mental Disorders (DSM), a GAF of 48 describes "serious symptoms" or "any serious impairment in social,

ORDER
PAGE - 10

occupational, or school functioning." DSM-IV-TR at 34 (4th ed. 2000). The ALJ stated he thoroughly reviewed the clinical findings of the clinicians who provided these scores, but gave the scores themselves very little weight because they lacked probative value in the analysis. (AR 32.) The ALJ noted the requirement that he conduct a function-by-function analysis of plaintiff's maximum RFC, and that, as shown in the accompanying explanations, GAF scores are an attempt to rate symptoms or functioning. *See* DSM-IV-TR at 32. He found, in this case, it was not evident from a review of the scores what the clinicians were rating. The ALJ further noted "the GAF scale 'does not have a direct correlation to the severity requirements in [the] mental disorder listings[.]'" (AR 32 (quoting 65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000).) The ALJ found the GAF scores did not convey information that furthered the functional analysis and gave them little weight.

Axis V of the multiaxial assessment system, or GAF, "is for reporting the clinician's judgment of the individual's overall level of functioning." DSM-IV-TR at 32. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). It is based on either an individual's symptoms or her functional impairments, whichever is lower. DSM-IV-TR at 32-33. The most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the Social Security Administration (SSA) continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

Because neither clinician offered an explanation for the GAF score (*see* AR 774, 802), the ALJ reasonably found the basis for the ratings not clear. The ALJ also reasonably found the GAF scores did not further the functional analysis and assigned the scores little weight. *See* AM-13066; *Vargas*, 159 F.3d at 1164 n.2. Plaintiff does not demonstrate error.[2]

Symptom Evaluation

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other

---

[2] Plaintiff also contends in her reply that she had raised specific assignments of error in the ALJ's failure to acknowledge (1) a physical therapist's findings he had difficulty standing and walking for a prolonged period due to pain and the consistency of this evidence with his testimony; or (2) that Dr. Kedar's tender point findings fully support her testimony about fibromyalgia-related symptoms and limitations. (Dkt. 16 at 2, 3, 5.) Plaintiff, at most, included a description of these records in the opening brief. (Dkt. 13 at 8-9.) "[A]rguments not raised by a party in an opening brief are waived." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009). In any event, the ALJ need not discuss each piece of evidence in the record. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Instead, "she must explain why 'significant probative evidence has been rejected.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). The ALJ addressed the tender point findings of Dr. Kedar, and reasonably concluded the medical record as a whole supported the conclusion plaintiff could perform the demands of work as reflected in the RFC.

[3] While the SSA eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* Social Security Ruling 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 12

evidence in the record. He provided a number of specific, clear, and convincing reasons in support of that conclusion.

A.     Medical Evidence

While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); Social Security Ruling (SSR) 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ here reasonably found the medical evidence supported the conclusion plaintiff could perform the physical and mental demands of work as set forth in the RFC, and that plaintiff's allegations were not consistent with the medical and other evidence in the record. (AR 26-30.)

Plaintiff's arguments to the contrary lack merit. The ALJ did not simply recite medical evidence in support of his conclusion. He provided a lengthy description of plaintiff's symptom testimony and medical evidence, along with a comprehensive explanation of why the clinical findings and other evidence supported the RFC assessed and a detailed discussion of the evidence inconsistent with plaintiff's allegations. (AR 25-30.) Again, plaintiff recites the content of a number of different medical records and construes this evidence to support a different conclusion.

ORDER
PAGE - 13

The ALJ's at least equally rational interpretation of the evidence will not be disturbed. Nor did the ALJ improperly employ the "objective evidence test" by relying solely on an absence of fully corroborating objective medical evidence. The ALJ, instead, pointed to the objective medical evidence as one of several reasons for rejecting plaintiff's symptom testimony. Finally, the ALJ did not improperly reject plaintiff's testimony about her fibromyalgia-related symptoms based on unrelated objective findings. The ALJ properly considered objective findings, related to fibromyalgia and other impairments, along with numerous other aspects of the record, in reaching his conclusion. *See* 12-2p ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of [fibromyalgia] symptoms, we consider all of the evidence in the case record[.]")

B.    <u>Treatment</u>

In evaluating symptom testimony, an ALJ properly considers evidence associated with treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), SSR 16-3p. The ALJ here properly considered evidence revealing medications/therapy had been relatively effective in controlling both plaintiff's pain and her mental health symptoms, and provided a number of specific examples in support of that conclusion. (AR 30-31.) *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (favorable response to conservative treatment, including physical therapy and medication, undermined reports of disabling nature of pain); *Morgan*, 169 F.3d at 599-600 (ALJ may consider evidence that symptoms improved with medication).

Plaintiff states she continued to experience symptoms and limitations even while taking medication. The ALJ, however, properly considered evidence in the record showing the effectiveness of treatment and rationally construed that evidence to show plaintiff's symptoms, while supporting the RFC assessed, were not as limiting as plaintiff alleged.

C. Activities

The ALJ found plaintiff's activities were not as limited as would be expected given her allegations. (AR 31.) Plaintiff reported her ability to shower and dress herself, take care of her son (laundry, clean, cook, general care), prepare meals, perform household chores, such as dishes, sweeping, mopping, laundry, and cleaning, go outside alone, drive a car, shop in stores for groceries, and handle her funds. Her hobbies included reading, watching movies, and using the computer. Plaintiff testified she read romance and science fiction novels, occasionally had dinners with roommate's friends and family, as well as her own, regularly went to her mother's place, brother's place, and the store, and attended her son's basketball and football games.

Plaintiff denies inconsistency between her testimony and activities, that the activities meet the threshold for transferable work skills, or that they show she can work. The ALJ, however, reasonably found the activities inconsistent with the degree of impairment alleged. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine testimony where they (1) contradict the claimant's testimony or (2) meet the threshold for transferable work skills).

D. Other Considerations

The ALJ considered that, although plaintiff alleged recurrent dizzy spells, treatment providers repeatedly noted she was negative for dizziness. (AR 30.) The ALJ construed the record to reflect that much of plaintiff's anxiety and depression was more related to situational stressors than to a clinical disorder. (AR 31 ("A treatment provider repeatedly noted that a lot of her anxiety and depression was situational.")) The ALJ also found inconsistent statements made as to why plaintiff stopped working, contrasting her July 2013 statement in a disability report that she stopped working because of her conditions, with her report in a September 2013 examination that she stopped working after having a conflict with her mother. (*Id.*)

Plaintiff states the fact she was not dizzy at all medical appointments does not disprove she experienced dizziness, and denies the evidence showed her anxiety and depression were entirely or primarily situational. She argues the ALJ did not reasonably assume the conflict that led her to stop working as an aide for her mother was entirely unrelated to her impaired social functioning.

Plaintiff fails to demonstrate the ALJ erred. The ALJ did not find plaintiff never experienced dizziness or that her anxiety and depression were entirely or primarily situational. The ALJ reasonably considered records in which no dizziness was noted, and discounted plaintiff's testimony as to the degree of her impairment from anxiety and depression based on evidence reflecting the significant involvement of situational stressors (*see, e.g.*, AR 733 (September 15, 2015: "She states worsening anxiety and depression over the past couple of months. A lot of this is situational due to her family."); AR 739 (October 13, 2015: "A lot of her problems are situational")). The ALJ also rationally construed the evidence to reflect inconsistency in plaintiff's reporting. (*Compare* AR 305 (plaintiff stopped working "Because of my conditions."), *with* AR 469-70 ("Her last job ended in 2010 or 2011. She did in-home care for her mother. . . . Her last job ended after having a conflict with her mother."; "On her last job, doing caretaking of her mother, Brandy said that her mother 'freaked out' in her car. This made Brandy anxious and she decided that she could not work with her mother anymore.")) The ALJ, in sum, properly considered these factors, among others, in the evaluation of plaintiff's symptom testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider inconsistencies in reporting or non-existent reporting of symptoms); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (specific, cogent reason for disregarding testimony included inconsistent statements as to why claimant left job); and 20 C.F.R. §§ 404.1529(c) and 416.929(c) (evaluation of symptom testimony includes consideration of any other factors concerning functional limitations and

restrictions due to pain or other symptoms).

## Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject lay witness testimony by giving reasons germane to the witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)

The ALJ considered lay statements of plaintiff's mother. (AR 316-23.) As described by the ALJ, the lay witness stated plaintiff's depression and anxiety made her very anxious around people, she was unable to use her arm at times due to shoulder pain, and she had a lot of joint pain and could not stand on her feet for long periods. (AR 33.) The ALJ gave these statements some weight because they were based on observations, but found the reported severity of symptoms inconsistent with the clinical findings of treatment providers and examiners.

Plaintiff argues the ALJ's reasons are not supported by substantial evidence or germane to her mother. She avers consistency between the lay testimony and many clinical findings the ALJ failed to evaluate. Again, however, plaintiff fails to show error. An ALJ may discount lay testimony based on inconsistency with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). The ALJ's reason was appropriate and germane to the lay witness. Plaintiff's assertion of error is no more than conclusory, and a failed attempt to substitute an alternative interpretation for the rational interpretation of evidence offered by the ALJ.

## RFC and Step Four and Five Conclusions

Plaintiff avers error in the RFC, VE hypothetical, and decisions at steps four and five as a result of the alleged errors discussed above. This mere restating of arguments does not establish

ORDER
PAGE - 17

error. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff also asserts, in wholly conclusory fashion, that the ALJ improperly found the jobs of janitor and office helper constituted past relevant work at step four because neither of these jobs amounted to substantial gainful activity. The Court finds this assertion, made without elaboration, explanation, or citation to supportive evidence, waived. *See Independent Towers of Wash.*, 350 F.3d at 929 (the bare assertion of an issue does not preserve a claim; "We require contentions to be accompanied by reasons."). Moreover, any error would properly be deemed harmless given the ALJ's identification of a significant number of jobs plaintiff could perform at step five. (AR 34-35 (identifying well over 100,000 other jobs nationally and over 1,900 jobs regionally plaintiff could perform); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."); *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 434 (9th Cir. 1988) (per curiam) (error in classifying claimant's past relevant work as "light" inconsequential where the record supported determination claimant was able to perform other light work and therefore was not disabled); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (over 2,300 jobs in the San Diego County area and 64,000 nationwide constituted a significant number); *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs in the Los Angeles/Orange County area constituted a significant number).

/ / /

/ / /

/ / /

/ / /

ORDER
PAGE - 18

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 19th day of November 2018.

Mary Alice Theiler
United States Magistrate Judge